*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. I. MADKIN, Minor.

UNPUBLISHED
December 03, 2024
11:13 AM

No. 369704
Wayne Circuit Court
Family Division
LC No. 2023-001254-NA

Before: GADOLA, C.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

Respondent appeals as of right an order terminating his parental rights to his minor child, AIM, under MCL 712A.19b(3)(f) (abandonment). We affirm.

## I. BACKGROUND

In 2022, the Wayne County Probate Court entered an order for authority to adopt that granted petitioners, April Lynn Hogston[1] and James Denver Hogston, Jr.,[2] the authority to file a petition for adoption of AIM. On July 24, 2023, petitioners filed a permanent custody petition in the Wayne Circuit Court requesting that the trial court take jurisdiction over AIM pursuant to MCL 712A.2(b)(6)(A)[3] (the parent, having the ability to support the child, has failed or neglected, without good cause, to provide regular and substantial support for the child for two years or more before the filing of the petition) and (B) (the parent, having ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected, without good cause, to do so for two years or more before the filing of the petition), and enter an order terminating respondent's parental rights to AIM under MCL 712A.19b(3)(f)(*i*) and (*ii*). The petition noted that a

---

[1] April Lynn Hogston will be referred to as April in this opinion.

[2] James Denver Hogston, Jr. will be referred to as James in this opinion.

[3] The petition erroneously cites MCL 712A.2(b)(5), but used the language from MCL 712A.2(b)(6).

-1-

guardianship order, placing AIM in petitioners' custody, was entered on May 7, 2014. Following a pretrial hearing, the petition was authorized by the trial court.

Following a bench trial addressing adjudication, statutory grounds, and best interests, the trial court determined AIM came within the court's jurisdiction pursuant MCL 712A.2(b)(6)(A) and (B), that statutory grounds for termination were established pursuant to MCL 712A.19b(3)(f)(*i*) and (*ii*), and that it was in AIM's best interests to terminate respondent's parental rights. The court noted that respondent made no efforts to send money to AIM, and even if the court were to accept that he directed his mother to give AIM funds, that only amounted to a couple hundred dollars. The court determined that there was neither substantial nor consistent support of AIM. It noted that while respondent's ability to pay was low, he still chose to pay for his own food, snacks, toiletries, and text messaging before focusing on the needs of AIM. The court stated that even prisoners are responsible to financially support their children. The trial court also found that respondent did have the ability to contact, visit, or communicate with AIM but failed to regularly and substantially do so without good cause for a period of two or more years before the petition was filed. Respondent had not visited AIM since 2018 and, at best, only sent a few cards. The court noted that respondent's sole attempt to call AIM in the last two years was so insignificant to him that he did not remember when he made the attempt. Respondent knew where petitioners lived, knew their phone numbers, and still did not make any effort to be a part of AIM's life. Finally, the court found that it was in AIM's best interests to terminate respondent's parental rights because she was doing very well in her home with petitioners, had all her needs met, and stated that she wants to be adopted by petitioners and does not consider respondent to be her dad. The trial court entered an order consistent with these findings.

## II. STATUTORY GROUNDS

Respondent argues there was insufficient evidence to support the trial court's finding that statutory grounds for termination were established pursuant to MCL 712A.19b(3)(f)(*i*) and (*ii*). We disagree.

This Court reviews a trial court's factual findings and ultimate determinations regarding the statutory grounds for termination for clear error. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). Notably, the clear and convincing evidence standard is "the most demanding standard applied in civil cases." *Id*. (quotation marks, citation, and alteration omitted).

> Evidence is clear and convincing if it produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct, and weighty and convincing as to enable the factfinder to

come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*Id.* (quotation marks and citation omitted).]

The trial court "may take into consideration any evidence that had been properly introduced and admitted at the adjudication trial . . . ." *In re Mota*, 334 Mich App 300, 316; 964 NW2d 881 (2020). The trial court may also consider "any additional relevant and material evidence that is received by the court at the termination hearing." *Id.* (citation omitted).

Respondent's parental rights were terminated pursuant to MCL 712A.19b(3)(f), which provides that termination is appropriate if:

> The child has a guardian under the estates and protected individuals code [EPIC] . . . and both of the following have occurred:
>
> (*i*) The parent, having the ability to support *or assist in supporting the minor*, has failed or neglected, without good cause, to provide regular and substantial support for the minor for a period of 2 years or more before the filing of the petition or, if a support order has been entered, has failed to substantially comply with the order for a period of 2 years or more before the filing of the petition.
>
> (*ii*) The parent, having the ability to visit, contact, or communicate with the minor, has regularly and substantially failed or neglected, without good cause, to do so for a period of 2 years or more before the filing of the petition. [Emphasis added.]

It is undisputed that petitioners were AIM's guardians pursuant to EPIC.

Incarceration does not provide neglectful parents with a get-out-of-jail-free card. See *In re Caldwell*, 228 Mich App 116, 120-121; 576 NW2d 724 (1998).[4] This Court's "primary task in construing a statute, is to discern and give effect to the intent of the Legislature." *In re AGD*, 327 Mich App 332, 343; 933 NW2d 751 (2019). The Legislature clearly did not intend to give incarcerated parents with limited earning ability the right to abandon their children. When viewed through this lens, the requirement that incarcerated parents *assist* with supporting their children suggests that the requirement to provide "substantial and regular support" must be assessed relative to the parent's means. In this case, there was evidence that respondent did obtain employment while incarcerated and earned money by taking classes. However, he spent the money on perks for himself, such as commissary purchases and text messages, rather than putting anything toward AIM.

---

[4] *Caldwell* construes MCL 710.51(6) which is largely identical to the statute at issue here, providing that the first requirement for a stepparent adoption is to establish that the biological parent "having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child . . . ."

The evidence also showed respondent failed to regularly or substantially visit, contact, or communicate with AIM, despite having the means to do so. Respondent could not recall the last time he tried calling AIM, and this alone shows he did not maintain regular or substantial contact with AIM. At best, respondent sent a few cards through the mail, which petitioners denied receiving. Respondent could have contacted petitioners to get in touch with AIM, could have sent more mail to AIM, and could have made an effort to arrange a visit with AIM at the prison. Respondent knew how to contact petitioners and knew where they lived, but he failed or neglected to communicate with AIM without good cause. There was no evidence that petitioners prevented respondent from contacting AIM.

Therefore, the trial court did not clearly err when it found that petitioners established MCL 712A.19b(3)(f) by clear and convincing evidence.

## III. BEST INTERESTS

Respondent argues the trial court erred by finding that it was in AIM's best interests to terminate his parental rights. We disagree.

"Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). This Court reviews a trial court's best-interests determination for clear error. *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App at 296-297.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). In making its determination, the trial court should weigh all of the evidence available to it and may consider the following:

> [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*In re Atchley*, 341 Mich App 332, 346-347; 990 NW2d 685 (2022) (quotation marks and citation omitted).]

Moreover, "[a] child's placement with relatives is a factor that the trial court is required to consider." *In re Gonzales/Martinez*, 310 Mich App at 434. While placement with a relative weighs against termination, it is not dispositive because a trial court "may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012).

-4-

Here, respondent's love for AIM was not in doubt. The trial court noted this fact, but it also found respondent made little to no effort to stay involved in AIM's life, did not support her financially, and did not communicate with her outside of sending, at most, a few cards. Moreover, AIM, who was 10 years old at the time of termination, wanted to be adopted by petitioner. AIM had always been cared for and supported by petitioners, and she viewed them as her parents. AIM had lived with petitioners for essentially her entire life, and petitioners had already adopted her half sister. AIM maturely stated that she did not have anything against respondent, but simply did not know him and wished to be raised by petitioners. The record is clear that there is no bond between respondent and AIM. Respondent has been incarcerated for about half of AIM's life and has failed to put forth any effort to remain in her life. Further, respondent admits that he played a role in causing AIM's mother to succumb to the substance abuse disorder that ultimately caused her death. Petitioners are AIM's grandparents, and this relative placement does weigh against termination; however, this does not outweigh the other factors, as well as AIM's need for permanence.

In sum, the trial court did not err by finding that it was in AIM's best interests to terminate respondent's parental rights.

Affirmed.

/s/ Michael F. Gadola
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado